IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| MORRIS DUANE BUCKLES,<br><br>Plaintiff,<br><br>vs.<br><br>HEIDI CROWE, et al.,<br><br>Defendants. | CV 18-00084-BLG-SPW-TJC<br><br>FINDINGS AND RECOMMENDATIONS OF U.S. MAGISTRATE JUDGE |
|---|---|

Pending before the Court are the parties' cross-motions for summary judgment. Motions have been filed by Plaintiff Morris Duane Buckles ("Buckles") (Doc. 43), Defendants Tom Green and Angela Macioroski ("County Defendants") (Doc. 40), and Defendants Heidi Crowe, Laurie Mills, Terrie Stefalo, Harlan Trombley ("State Defendants") (Doc. 39).

The motions are fully briefed and ripe for review. After considering the parties' submissions, the Court recommends that the State Defendants' motion be **GRANTED**; the County Defendants' motion be **GRANTED** in part; and Buckles'

motion be **DENIED**.

## I. Background

At the time of the filing of his Complaint, Buckles was an inmate at Crossroads Correctional Facility in Shelby, Montana, having recently been transferred there from the Dawson County Correctional Facility ("DCCF") in Glendive, Montana. He is no longer incarcerated. Buckles' Complaint and Amended Complaint arise out of his time at DCCF, where, he alleges, his United States and Montana Constitutional rights were violated, because he was not able to participate in sweat lodge ceremonies in alignment with his Native American religion. Following this Court's ruling on the parties' motions to dismiss and various other matters, Buckles' remaining claims are that he is entitled to monetary damages under 42 U.S.C. § 1983 for the individual County and State Defendants' alleged violations of his First and Fourteenth Amendment rights under the United States Constitution (Counts 1 and 2), and a claim against the State of Montana and the County Defendants for violation of Art. II, §§ 4, 5, 28, and 38 of the Montana Constitution (Count 4).

It is important at the outset to identify the roles of the various defendants in this matter, because Buckles' general legal allegations need to align, factually, with the Defendants who had the capacity to act on any particular allegation. Heidi Crowe works for the Montana Department of Corrections ("DOC") as the Contract

Placement Correctional Services Manager within the Contract Placement Bureau of Montana State Prison (Doc. 42-14 at 2); Terri Stefalo is the DOC Religious Activities Coordinator at Montana State Prison (Doc. 42-16 at 2); Laurie Mills is the DOC contract monitor for DCCF (Doc. 42-15 at 2); Harlan Trombley is the DOC Native American Indian liaison (Doc. 42-17 at 2); Angela Macioroski was employed by Dawson County as the programs director at DCCF during Buckles' time there (Doc. 59, ¶ 13); and Tom Green is employed by Dawson County as the Warden of DCCF (Doc. 42-13 at 1-2).

Buckles alleges that during the time he was incarcerated at DCCF, from February 7, 2017 until December 20, 2017, he sought access to a sweat lodge so that he could practice his religion.[1] DCCF does not have a sweat lodge. By May 4, 2017, Buckles had filed an Inmate/Offender Informal Resolution Form stating that DCCF was violating his constitutional rights. He asked to have access to a sweat lodge at DCCF or to be transferred to a facility with a sweat lodge. Buckles' request was characterized as a request for religious accommodation and forwarded to the Religious Issues Committee, which was due to meet at its regularly scheduled time in August. Buckles was eventually informed that the committee had denied his request for a sweat lodge at DCCF, and he grieved that decision.

[1] These facts are taken from Plaintiff's Statement of Undisputed Facts. (Doc. 53.)

His request for a transfer was eventually granted, and he was transferred to a facility with a sweat lodge.

During his time at DCCF, Buckles participated in other activities of his Native American religion, including drum circle, smudging, and pipe ceremony. He was DCCF's designated pipe carrier from September 2017 until he left DCCF on December 20, 2017.

## II. Standard for summary judgment

Federal Rule of Civil Procedure 56(a) entitles a party to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has satisfied its burden, the non-moving party must go beyond the pleadings and designate by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Id.* at 324. In deciding a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party

and draws all justifiable inferences in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007). "Cross motions are also evaluated separately under the same standard." *California Found. for Indep. Living Centers v. Cty. of Sacramento*, 142 F. Supp. 3d 1035, 1054 (E.D. Cal. 2015).

**III. Analysis**

In Counts I and II of the Amended Complaint, Buckles claims that the County and State Defendants violated his First and Fourteenth Amendment rights under the U.S. Constitution. Buckles' First Amendment claim is that not having access to a sweat lodge at DCCF was an unconstitutional burden on his First Amendment right to the free exercise of his religion. (Doc. 30 at 10.) Buckles' Fourteenth Amendment claims are less clear. First, Buckles contends that his treatment at DCCF violated the Equal Protection Clause because he was not treated the same as all persons similarly situated. (Def's br. Doc 44 at 5.) He defines this group as "people who wanted to practice their religion while incarcerated." *Id*. Second, he alleges that his due process rights were violated by placement in a facility that Defendants knew did not have a sweat lodge. (Doc. 54 at 6; Doc. 30 at 10-11.)

In Count IV, Buckles asserts claims under Art. II, §§ 4, 5, 28, and 38 of the Montana Constitution against the State of Montana and the County Defendants. Buckles' state law claims parallel his federal constitutional claims.

**A. Defendants Trombley and Crowe**

As an initial matter, State Defendants have asked for the dismissal of Heidi Crowe and Harlan Trombley, because Buckles has alleged no violation of his rights at their hands in his Amended Complaint. (*See, generally*, Amended Complaint at Doc. 30.) State Defendants filed a motion to dismiss these defendants and reiterated their position in their brief on summary judgment. (Doc. 46 at 11.) Buckles appears to concede that "these Defendants were not involved in the decisions that violated Mr. Buckles' civil rights" (Doc. 54 at 8); therefore, Defendants Trombley and Crowe should be granted summary judgment on the merits.

**B. Qualified Immunity for Buckles' § 1983 claims**

Both the County Defendants and the State Defendants contend they have qualified immunity from Buckles' federal constitutional claims under 42 U.S.C. § 1983. (State Defs. Br., Doc. 46; County Defs. Br., Doc. 49.) The Court previously outlined the framework for qualified immunity analysis in its Findings and Recommendations and Order of May 27, 2020. (Doc. 50 at 4-6.) At the time, however, the Court did not have sufficient facts to complete its analysis. (Doc. 50

at 6-7.) It now does.

The doctrine of qualified immunity protects government officials from civil liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "'Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Stanton v. Sims*, 572 U.S. 3, 6 (2013) (citations omitted).

To determine if an official is entitled to qualified immunity a court considers two factors: (1) whether the facts as alleged state a violation of a constitutional right, and (2) whether the right is clearly established, such that a reasonable official would have known that his or her conduct was unlawful. *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (*receded from* by *Pearson v. Callahan*.) A district court is "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

The Supreme Court in *Pearson* moved away from the strict two-step analysis of *Saucier,* which required a court to first consider whether there was a violation of a constitutional right. The Court did so, in part, to allow constitutional

avoidance in cases which "require[…] courts unnecessarily to decide difficult constitutional questions when there is available an easier basis for the decision (*e.g.,* qualified immunity) that will satisfactorily resolve the case before the court." *Pearson*, 555 U.S. at 235 (internal quotations and citations omitted). "There are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right." *Pearson*, 555 U.S. at 237. As stated in *Camreta v. Greene*, 563 U.S. 692, 705 (2011):

> That means a court can often avoid ruling on the plaintiff's claim that a particular right exists. If prior case law has not clearly settled the right, and so given officials fair notice of it, the court can simply dismiss the claim for money damages. The court need never decide whether the plaintiff's claim, even though novel or otherwise unsettled, in fact has merit.

Here, the Court will start with the second step of the analysis because it is determinative: did Buckles have a clearly established constitutional right to have access to a sweat lodge, either by building a sweat lodge for him at DCCF or transferring him to another facility that had an existing sweat lodge?

1. "Clearly established"

In determining whether a right is clearly established, this Court first looks to binding precedent from the Supreme Court or the Ninth Circuit. *Boyd v. Benton Cnty.*, 374 F.3d 773, 781 (9th Cir. 2004). In the absence of binding precedent, "the Court looks to whatever decisional law is available to ascertain whether the law is clearly established for qualified immunity purposes, including decisions of state

courts, other circuits, and district courts." *Id.*, at 781 (quoting *Drummond v. City of Anaheim*, 343 F.3d 1052, 1060 (9th Cir. 2003) (internal quotations omitted)). It is not required that there be a case directly on point before concluding that the law is clearly established, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Stanton*, 572 U.S. at 6 (internal quotation omitted).

A right is clearly established where it is "sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right." *Hines v. Youseff*, 914 F.3d 1218, 1229 (9th Cir. 2019) (*quoting Reichle v. Howards*, 566 U.S. 658, 664 (2012).) In determining if the right is clearly established, the court must consider the law, "in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 57 U.S. 7, 12 (2015) (per curiam) (internal quotation marks omitted). "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment is appropriate." *Saucier*, 533 U.S. at 202 (referring to *Malley v. Briggs*, 475 U.S. 335 (1986)).

Buckles "bears the burden of proving that his allegedly violated rights were clearly established." *Galen v. Cty. of Los Angeles*, 477 F.3d 652, 665 (9th Cir. 2007) (citing *Davis v. Scherer*, 468 U.S. 183, 197 (1984). But Buckles has not attempted to do so and, in fact, has not substantively addressed the Defendants'

qualified immunity arguments. In response to Defendants' request for qualified immunity, Buckles only states that qualified immunity is "an artificial construct," "a bizarre doctrine," and urges the Court to "take the very basic step of acknowledging that we all really do know when we are violating civil rights, and not let the state actors get away with it." (Doc. 54 at 7, 8.) Buckles also notes that the "Supreme Court is considering a batch of qualified immunity cases this term and may well eliminate the concept from civil jurisprudence." (*Id.* at 7.) Be that as it may, this Court is required to follow existing precedent, and not speculate what the United States Supreme Court may do in the future.

Buckles has also not cited any precedent to show that Defendants violated any clearly established constitutional right. He does cite two cases in his briefing which relate to the provision of a sweat lodge in prison: *Yellowbear v. Lampert*, 741 F.3d 48 (10th Cir. 2014) and *Knows his Gun v. Montana*, 866 F.Supp. 2d 1235 (D. Mont. 2012). In *Knows His Gun*, this Court denied a motion to dismiss under Fed. R. Civ. P. 12(b)(6), finding allegations that the defendant required strip searches prior to sweat lodge ceremonies and prohibited the use certain spiritual materials in connection with the ceremonies, sufficiently stated a claim of substantial burden on their religious exercise. *Knows His Gun,* 866 F.Supp.2d at 1241. In *Yellowbear*, the Tenth Circuit determined that a factual issue existed as to whether preventing an inmate's use of a sweat lodge served compelling

government interests and was the least restrictive means of furthering that interest. *Yellowbear*, 741 F.3d at 62. Nevertheless, neither case clearly establishes a constitutional right to a sweat lodge in prison.

First, both cases were brought under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1(a). The RLUIPA provides a stricter standard for the deprivation of a constitutional right than is applicable here. Under the RLUIPA, the government cannot impose a substantial burden on the religious exercise of an incarcerated person unless it "(1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling governmental interest."

In this case, however, Buckles has acknowledged that he does not have a claim under the RLUIPA, and all RLUIPA claims have been dismissed. (Doc. 56 at 2.) The parties, therefore, appear to agree that the appropriate standard to be applied here is the "reasonable relation" standard established in *Turner v. Safley*, 482 U.S. 78, 89-90. (See Docs. 44 at 3; 46 at 20; and Doc. 41 at 4.) That is, whether the action "is reasonably related to legitimate penological interests." *Id.*[2]

---

[2] In making this determination, a court applies the "*Turner* factors," which require consideration of (1) whether there is a rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) the impact an accommodation will have on guards and other inmates, and the allocation of prison resources; and (4) the absence of ready alternatives. *Turner*, 482 U.S. at 89-90.

Consequently, the higher standard imposed by the RLUIPA, requiring a "compelling governmental interest" and implementation of the "least restrictive means," does not apply here.

In addition, both *Yellowbear* and *Knows His Gun* involved restrictions on the use of a sweat lodge already in place at the prison facility. Neither considered the question posed here – whether a prison is required to construct a sweat lodge at the facility or transfer an inmate to another facility that has a sweat lodge. Indeed, then-Judge Gorsuch expressly acknowledged in *Yellowbear* that prisons without sweat lodges "very well may have compelling reasons to refuse to build sweat lodges given their particular resource limitations and safety challenges." *Yellowbear*, 741 F.3d at 58.

Therefore, neither of the cases cited by Buckles comes close to clearly establishing an inmate's constitutional right to a sweat lodge in prison to practice their Native American religion. A survey of other cases around the country on this issue similarly fails to establish a clear line of authority establishing such a right.

The United States Supreme Court has not addressed the question. The Ninth Circuit did consider such a claim in *Allen v. Toombs*, but found the restrictions on the use of a sweat lodge by certain inmates under disciplinary confinement were reasonably related to concerns of prison security and did not violate the constitution. *Allen v. Toombs*, 827 F.2d 563, 567 (9th Cir. 1987).

The Eighth Circuit reached a similar conclusion in *Hamilton v. Schriro*, 74 F.3d 1545 (8th Cir. 1996). Applying the *Turner* factors, the court found that the prison's prohibition of a sweat lodge was rationally related to penological interests of safety and security and did not violate the prisoner's constitutional rights.

Twelve years later, the Eighth Circuit revisited the issue in a claim brought under the RLUIPA in *Fowler v. Crawford*, 534 F.3d 931 (8th Cir. 2008). The court found that denial of a sweat lodge was in furtherance of compelling governmental interests and was the least restrictive means to further the interest. *Id.* at 939, 942. In so holding, the court observed:

> the pertinent query is whether a federal appeals court, far removed from the realities of institutional life at [the prison], or state prison officials—well familiar with (1) the size and nature of [the prison's] population, (2) the staffing problems and budgetary restrictions under which they labor, and (3) the various religious practices they are asked to accommodate—is best suited to make such a decision.

*Id.*

The Court had little difficulty according deference to the professional judgment of prison officials when those views "rest on more than mere speculation and conjecture." *Id.*

In this district, Judge Lovell recognized in *Knows His Gun* that denial of a sweat lodge was not tantamount to a constitution violation. After surveying cases on access to sweat lodges under the RLUIPA, the Court concluded that "some courts have even held that prohibiting sweat lodges altogether may be the least

restrictive means to further a prison's compelling interests in maintaining a secure and safe environment." *Knows His Gun*, 866 F.Supp.2d at 1239 (internal citations and quotations omitted).

This is not to say there is no authority finding the denial of a sweat lodge to be a violation of constitutional rights. For example, sandwiched between the Eighth Circuit's decisions in *Hamilton and Fowler*, the Northern District of Iowa found that a year-long delay in the construction of a sweat lodge at a prison facility violated the Native American inmate's First Amendment free exercise rights. *Youngbear v. Thalacker*, 174 F.Supp.2d 902 (N.D. Iowa 2001). While the district court ultimately concluded that the defendants were entitled to qualified immunity because the right had not been clearly established (*id.* at 920), the court found that the delay in construction was not reasonably related to valid penological interests. *Id.* at 916.

Nineteen years after the *Youngbear* decision, there is still no clearly established constitutional right to access a sweat lodge in prison to practice Native American religion.[3] Even if it could be found that there is a split of authority on

---

[3] The Tenth Circuit in *Yellowbear* listed some of the cases across circuits that had considered the issue, citing: *McElhaney v. Elo,* 202 F.3d 269, 2000 WL 32036, at *4 (6th Cir.2000) (unpublished decision affirming the granting of summary judgment for defendant prison officials on First Amendment claim that plaintiff's free exercise of religion rights were denied by lack of access to a sweat lodge); *Thomas v. Gunter,* 103 F.3d 700, 702 (8th Cir.1997) (affirming the granting of summary judgment in favor of prison officials where district court determined that

the issue, it would not provide a clearly established right to a sweat lodge, such that only a "plainly incompetent" official or one "knowingly violating" the law would fail to recognize the right. "When the courts are divided on an issue so central to the cause of action alleged, a reasonable official lacks the notice required before imposing liability." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1868 (2017).

**C. Conclusion**

In sum, the Court finds that Buckles did not have a clearly established right to have a sweat lodge constructed for him at DCCF or to be transported to a facility that had a sweat lodge. Therefore, the individual State and County Defendants are entitled to qualified immunity on Buckles' federal law claims under 42 U.S.C. §1983 in Counts 1 and 2 of the Amended Complaint.

Since summary judgment on those claims results in a dismissal of all claims

---

denial of extended daily access to sweat house was rationally related to legitimate penological interests); *Cubero v. Burton,* 96 F.3d 1450, 1996 WL 508624, at *1 (7th Cir.1996) (unpublished decision considering claims that prison officials interfered with inmates' First Amendment right to practice their Native American religion by denying them religious materials, permission to "smudge" in their rooms, and temporarily closing sweat lodge at prison); *Hamilton v. Schriro,* 74 F.3d 1545 (8th Cir.) (considering Native American inmate's claim that prison officials violated his First Amendment right to free exercise of religion by denying him access to sweat lodge), *cert. denied,* 519 U.S. 874, 117 S.Ct. 193, 136 L.Ed.2d 130 (1996); *Thomas v. Gunter,* 32 F.3d 1258, 1261 (8th Cir.1994) (holding that prison officials would not be entitled to qualified immunity for violating prisoner's rights to free exercise of religion unless rational relationship could be shown between legitimate penological interests and denial of access to prison sweat lodge for prayer).

over which it had original jurisdiction, the Court should decline to exercise its supplemental jurisdiction to hear and decide Buckles' Montana state law claims in Count IV. 28 U.S.C. § 1367(c)(3); see also *Acri v. Varian Associates, Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) ("The Supreme Court has stated, and we have often repeated, that 'in the usual case in which all federal law claims are eliminated before trial, the balance of factors . . . will point towards declining to exercise jurisdiction over the remaining state-law claims' " (citation omitted)). This is particularly true here, where consideration of Buckles' claims in Count IV would require the Court to weigh in on important issues under Montana's Constitution.

THEREFORE, based on the foregoing, the Court makes the following RECOMMENDATIONS:

1. The Defendants' motions for summary judgment (Docs. 39, 40) should GRANTED as to Buckles' claims under 42 U.S.C. § 1983 in Counts 1 and 2 of the Amended Complaint;
2. Plaintiff's motion for summary judgment (Doc. 43) should be DENIED;
3. Having dismissed all claims over which this Court has original jurisdiction, the Court should decline supplemental jurisdiction over Plaintiff's state law claims, and dismiss the claims against the State of Montana and the County Defendants in Count 4, without prejudice; and
4. The clerk should be directed to enter, by separate document, a judgment in

favor of Defendants and against Plaintiff Buckles.

**NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT**

The parties may object to the Findings and Recommendations within 14 days. *See* 28 U.S.C. § 636(b)(1).[4] Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

DATED this 22nd day of February, 2021.

*/s/ Timothy J. Cavan*
Timothy J. Cavan
United States Magistrate Judge

[4] This deadline allows a party to act within 14 days after the Findings and Recommendation is "served." Federal Rule of Civil Procedure 6(d) allows three additional days after the period would otherwise expire.